UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

2018 JAN 25 P 1: 43

SANDRI RIJO,
PETITIONER-APPELLANT

v.

UNITED STATES,
RESPONDENT-APPELLEE

On appeal from the Unites District Court
For the First District, Puerto, Rico
CRIMINAL NO: 12-068 [ADC]
APPEAL NO: 17-2213

CERTIFICATE OF INTERESTED PERSONS
FILED BY APPELLANT

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

| | |
|---|---|
| ADAMES, ANITA HILL | ATTORNEY FOR DE LA CRUZ |
| CARBO, HECTOR RAMIREZ | AUSA |
| CORRADA, VICTOR MIRANDA | ATTORNEY FOR APPELLANT |
| ORTIZ, EUGENIO LOMBA | AUSA |
| Lopez, Marcos E. | Magistrate Judge |
| Delgado, Aida M. | Chief Judge |

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
JOHN JOSEPH MOAKLEY UNITED STATES COURTHOUSE
ONE COURTHOUSE WAY, SUITE 2500
BOSTON MA. 02210-3002

2018 JAN 25 P 1:48

SANDRI RIJO
APPELLANT

V.

UNITED STATES OF AMERICA,
APPELLE

APPEAL NO: 17-2213
CIVIL ACTION NO: 15-1915[ADC]
CRIMINAL NO: 12-068 [ADC]

---

## APPLICATION FOR CERTIFICATE OF APPEALABILITY (COA)
## REQUEST FOR COMPLIMENTARY (COA)
## IN THE U.S. CIRCUIT COURT OF APPEALS PURSUANT TO RULE 5.1

Comes now Appellant, Pro Se., Sandri Rijo, and pursuant to 28 U.S.C. § 2255 and Fed. R. App. P. 22(b), submits this Application for issuance of a **Certificate of Appealability** for an appeal from the District Court's opinion and order issued November 6th, 2017 and to request a **Complimentary (COA)**.

The Appellant alleged in his § 2255 that his conviction and sentence was constitutionally infirmed because they were contrary to **Strickland V. Washington**, due to defense Counsel's ineffective performance. The Appellant did setforth certain acts and/or omissions by counsel. Acts and omissions which failed to assure that the Government did not manipulate procedures, laws and rule of evidence in order to obtain a conviction and a greater sentence for this Appellant.

STANDARD FOR REVIEW

1) Pursuant to Buck V. Davis, 580 U.S. 137 S.CT. 197 L.Ed. 2d 1, 2017 US lexis 1429, A Certificate of Appealability (COA) inquiry is not co-extensive with merits analysis. At the (COA) stage, the only question is whether the Applicant has shown that Jurists of reason could agree with the District Court's resolution of the Appellant's

constitutional claims or that Jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Miller-EL V. Cockrell, 537 U.S. 322, 336 (2003); Slack V. Daniel, 529 U.S. 473, 484 (2000).

2) Strickland V. Washington, 466 U.S. 668 (1984) determined that the Sixth Amendment right is a right to effective assistance of counsel. The first prong of the two prong test is **reasonableness**. If the Appellant shows that no competent counsel would have taken the action that his counsel [took], the first prong is met. **Strickland's** prejudice prong generally requires the Appellant to show there is a reasonable probability that for Counsel's unprofessional errors the result of the process would have been different.

In the substantive context, courts have determine, where there is no proof of prejudice, there is no violation. However, the courts have determined that pursuant to harmless error analysis a violation of a defendant's due process clause, when as follows;(A) the contrary conclusion is not required by the principle of stare decisis, (B) **trial errors** that occur during the presentation of the case to the jury, and (C) may be quantitatively assessed in the context of other evidence presented in order to determine whether the evidence's admission was harmless beyond a reasonable doubt. And (D) Promote public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Arizona V. Fulminate, 499 US 279, 113 L.Ed 2d 302, 111 S.CT. 1246 (1990)

This Appellant's application is being submitted through the assistance of a fellow inmate. The Appellant is unable to hire an attorney. However, the necessary research of the facts and law of this case have been done. The Appellant request the Staff Attorneys, Clerk and Court to review the substance and not form of this application. The Appellant acknowledge that the § 2255, which was also prepared by a fellow inmate, did not reach all the issues of errors and omissions by the defense counsel necessary to give the total scope of his deficient performance. The Appellant therefore is requesting a **Complimentary Certificate of Appealability on two additional issues**. Appellant also

2

request consideration for every remedy available that the Court deems warranted.

## SUMMARY OF THE ISSUES

The Appellant alleges that his conviction and sentence are constitutionally infirmed due to the following:

(1) Defense Counsel was ineffective for presenting a **Misidentification Defense Strategy with out an alibi or any formidable evidence to support the strategy, therefore ultimately committing perjury on the court.**

(2) **Counsel was ineffective for inducing improperly admitted evidence by an alleged co-conspirator concerning a purported threat** made by Appellant toward him. The testimony represented an un-investigated allegation of prior bad act which was unfair and prejudicial. Counsel, after having induced the comment failed to request the court to cure the remark, and later failed to object the government including the remark as an **obstruction of Justice, and enhancing the Appellant by 2-levels.**

(3) The Disparity Between Appellant's Sentence And The Sentence imposed on Other Defendants Was Unreasonable.

## STATEMENT OF FACTS

Appellant, Sandri Rijo, timely motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Appellant sought post conviction relief on the basis that his criminal-Trial Attorney, Victor P. Miranda Corrada rendered ineffective assistance of counsel. Appellant did not raised the ineffective assistance of counsel claim in his appeal before the First Circuit. Id., because he believed that "[i]neffective assistance of counsel cannot be raised on appeal due to the record not being complete [sic], so the proper place is during collateral proceedings (§ 2255)."

In order for this Honorable Court to review this application in

3

its proper context relative to the defense counsel's deficient performance, a statement about the background of the Appellant is needed. The Appellant, Sandri Rijo was born in 1978 in the Dominican Republic. He left school after the 10th grade (SA58)and came to Puerto Rico in 2003 (SA57). The Appellant's father is deceased and his mother and brother still live in the Domican Republic. Appellant speaks no english and has worked in construction, painting, and as a mechanic. (ADD47), (SA58-59). He has two daughters that he helps support, (ADD47, SA57-58). The Appellant's sole reported assets includes a twenty year old car purchased for $600.00. He has no credit history and he has **no prior criminal record.** (ADD47,SA57-59)

The Appellant was arrested along with (13) thirteen other men who were involved in a conspiracy to smuggle 924kgs of cocaine through the shores of Santa Isabel, Puerto Rico, January of 2012. Criminal No: 12-068-6(ADC) and Civil No: 15-195(ADC). Of the fourteen men indicted for the conspiracy, only the Appellant and coconspirator, Dela Cruz Feliciano went to trial on the charges. All of the other defendants accepted a guilty plea.

Trial Counsel, Victor P. Miranda-Corrada, devised a strategy to put forth evidence to the Jury based upon a single issue of **mis-identification.** Counsel's premise for this strategy was based upon him having obtained the discovery packaged which disclosed possible errors in the DEA 6 report prepared by Agent Rosario. The discovery also contained the Agent's hand written notes from which the report was prepared. The significant of the errors by Counsel's thinking, created descrepancy by placing the Appellant in different places during the unfolding of the conspiracy, therefore allowing him to **sow seeds of reasonable doubt by labeling any evidence of Appellant's culpability inconclusive.**

In particular, the DEA 6 report erroneously stated that Appellant Rijo's name was confused with Sandy Navarro, another member of the 14 men conspiracy ring. The report placed Appellant on the motor boat helping to transport the drugs to shore as oppose to Sandy Navarro.

In comparison, the Government's evidence included testimony from confidential informant, Robert Berroa, two coconspirators, Freddy

4

Altagracia and Elbis Fermin Cedeno, multiple law enforcement agents involved with the investigation and intervention, and two experts with knowledge of drug analysis, drug cost and practices of drug trafficking organizations. The informant and both coconspirators were willing to testify against the Appellant and did invariably testify that the Appellant participated in the drug trafficking operation, first as a look out man and at the last minute was ordered to help unload the bales of cocaine form the boat unto the SUV parked by the shore.

The discovery package further contained the facts that agent Vachier, Border Patrol Agent, Isaac Rivera, and agent Arias, all report their surveillance of the Nissan Pathfinder leaving the shore along with two other vehicles. That when the Nissan Pathfinder was stopped and the passengers were ordered to step out, that Appellant, Rijo stepped out of the vehicle, and despite the officers telling him to drop to the ground, that he raised his hand and ran from the vehicle towards a bushy area with trees and high grass. The Appellant was apprehended after running. (TT 09/11/12, P22, p58-83)

## ARGUMENT

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL:

Defense Counsel was ineffective for presenting a Misidentification Defense as a strategy with out an Alibi witness/ or any formidable evidence to support the strategy, Without either of the two, counsel would be engaging in misrepresentation to the court.

To succeed on a claim of Ineffective Assistance of Counsel, the Appellant must show that (1) Counsel's representation fell below an objective standard of <u>"reasonableness." Strickland V. Washington supra</u>

1.1    It is incoceivable that the trial attorney, in the face of overwhelming evidence against his client, would put forth an ill-conceived defense of Misidentification with out any formidable evidence to support such a claim. Further, and maybe even worst, Counsel proceeds to argue that the government improperly or inaccurately characterize Appellant's role in the conspiracy.(see counsel's opening statement TT. 09/10/12, Direct appeals counsel brief 11/12/13) Counsel knew or should have known that culpability is shared in a conspiracy

5

and the two different types of defense would be contradictory. It is inconceivable that any attorney exercising reason in a case would put forth on one hand a proffer that his client was not a part of the conspiracy, and later try to argue that his role was minimum. In this instant case, Counsel proffering a mis-identification defense when 12 of the 14 coconspirators had accepted guilty pleas was unreasonable.

1.2     Counsel knew in advance of the trial that the law enforcement agents would be testifying that they apprehended his client at the same time as 12 other coconspirators; (2) that his client ran from them but was apprehended; (3) that upon the stop, 924kgs of cocaine was seized out of one of the three vehicles the conspirators were traveling in. (TT. 09/13/12 pp98-99)

1.3     During the first day of trial, Counsel gave an opening statement which included the proffer to present evidence of a **Misidentification** defense. Counsel stated the following: "About January 23 to 26, 2012 ...the key dates we have to deal with in this case. Appellant was asked by Juan Gabriel Baltazar, codefendant in this case, they knew each other because they had been doing odd jobs together. Appellant had been told that **Baltazar's** brother-in-law was coming in a yola through Santa Isabel...He went out to help his friend... Now in the early dawn of January 26, after they picked up Damian Rojas,(the friend) they were stopped by more than ten officers... Appellant gets scared and run." (see Opening Statement by Counsel at trial 09/  /12)

1.4     What makes this defense strategy unreasonable is that neither Juan Baltazar nor Damian Rojas could serve as the Appellant's alibi witness because they were codefendants, and they both accepted guilty pleas. Counsel's abruptly shifted from his opening statement that the Appellant was there at the shore to pick up a friend, (to the Government confused his client's role in the trafficking), means that his first statement was a lie.

1.5     This impossible defense that counsel put forth could have been avoided if the Appellant was properly advised to plead guilty like his codefendants. It is a fact that five of Appellant's codefendants accepted a guilty plea and sentence of 70 months. (SA19) That the same plea agreement was made available for Appellant. Further, the record

6

discloses that the Government made clear to Counsel that a plea deal, in which the Government would recommend a sentence of 70 months was still available to Appellant just two weeks before trial.(SA37) However, counsel failed to make this offer known to the Appellant. In **United States v. Rodriquez-Rodriquez, 929 F.2d 747, 752 (1st Cir. 1991)** the Court held, "a defendant has a right to be informed by his counsel of a plea offer and a failure to do so constitutes ineffective assistance of counsel." Further, failure to present a plea offer to a defendant is a **Plain Error.**

1.6     The Government made known to counsel that it filed a motion to use intrinsic and extrinsic evidence, which mentioned the testimony of the two Government's witnesses, both of whom were mentioned by defense counsel in his opening statement. The motion provided that they both placed the Appellant , Sandi Rijo in the SUV traveling to Salinas, Puerto Rico. That defense counsel was well aware of what codefendant Altargracia had told the Prosecutors about Appellant Rijo's involvement. Never-the-less counsel chose to disregard what the Government disclosed and proceed to trial any way with an opening statement about his client being **Misidentified,** and with out any substantive evidence to factually and legally support his defense. This type of reasoning is not only legally illogical but defies common sense. Counsel purposely misled the Court, and/or committed perjury by offering such defense in the face of such overwhelming evidence. Either counsel failed to investigate, failed to accurately calculate, or planned a defense by incorporating lies. Either way, counsel's action and/omissions cost the Appellant an additional 118 months in prison, when comparing the plea offer he failed to make available to Appellant. Further, Counsel's misleading the court is not a strategic choice, and should be reviewed for Plain Error.

The U.S. Supreme Court agreed on September 28, 2017, Id. to hear a death row case where an inmate's lawyer conceded his client's guilt to avoid the ultimate punishment of death. The inmate wanted his attorney to present an alibi defense but such a defense would not have been believable in light of the state's overwhelming evidence. The court said, "in this case, presenting an alibi defense at the guilt phase put McCoy's attorney in an ethical conundrum, as committing perjury is a crime."

In this instant case, Counsel presenting such an untruthful testimony

7

was truly an insult on the Court's intelligence. Counsel had the option to withdraw from the case and allow his client to represent himself, or express to his client the overwhelming evidence of guilt against him and allow him to plead like his codefendants. **McCoy V. Louisiana, U.S. No: 16-8255, (09/18/17)**

**1.7** The evidence adduced at trial and the PSR established that the Appellant had no prior **Criminal Record**, played a very small role in the offense, and had limited education and understanding of the legal system, which obviously adversely affected his choices in the course of the litigation. In this regard, only Counsel had the sophistication and legal requisite skills. Therefore, Counsel alone adopted the ill-conceived, unreasonable strategy of presenting a **Misidentification defense**. Counsel knew or should have known that in order to prevail on this type of defense he needed an alibi witness **or an opportunity to cast doubt on the Prosecutor's evidence other than a typo error.**

**1.8** In fact Counsel never attempted to present an Alibi witness because he knew that there was none. second, Counsel seizing on the thinly clad defense of discrepancy with the names inaccurately written in the DEA 6 report to support a **Misidentification defense was unreasonable**. This approach was unreasonable because Counsel received a list of the Government's witnesses and knew that the Agent who produce the report was not on the list and there was no attempt made by counsel to have his notes tendered into evidence. Therefore, Counsel's attempted use of said defense was flawed from inception and speaks to his ineffective deficient performance.

**1.9** The Trial transcript(TT 09/10/12)(A219), along with a citing in the District Court's **Opinion and Order**, reveal that the Court repeatedly informed Counsel that he had the right to call agent Rosario who produced the DEA 6 report as a witness, and introduce the hand written notes, that purported to contained the erroneous statements that would represent exculpatory evidence favorable to Appellant. Counsel declined to do this. Counsel stated his reasoning to the Prosecutor as follows: "that as a matter of strategy it was better not to call agent Rosario to take the stand. That the risk of prejudice to the defendant surpassed the evidentiary value of the testimony or the

DEA 6 NOtes. That he understood the issues of the name confusion would pass as a "typo" rather than a defense, and he wanted to avoid that the story of the Prosecutor be submitted to the jury again by a witness that was called by the defense." However because Counsel had proffered in his opening statement that he would disclose to the Jury that the Government misidentified his client, and that the Goverment withheld evidence which would be exculpatory in nature, his strategy was locked in. In order for counsel to make good on his proffer he needed to confront his client's accuser. That meant either direct, or cross examination of Agent Rosario with his notes.

Counsel, in his opening statement placed testimonial evidence as an issue, he was required to demand availability. However, Counsel failed to confront Agent Rosario with his notes for impeachment. Therefore, counsel denied his client the right to confront his accuser, especially after making the testimonial evidence an issue. Crawford V. Washington, 158 LED 2d 177, 541 U.S. 36 (2004)

1.10    Counsel's statement to the Prosecutor was an admission that he had no defense, and that using the misidentification strategy was simply a ruse. It is obvious that Counsel knew he was not going to call agent Rosario or impeach his notes from the beginning, and he had no alibi witnesses, therefore Counsel's best option for serving his client would have been to offer him the Government's guilty plea.

1.11    The Court pointed to case law, Lema V. United States, 987 F. 2d 48, 54 (1st. Cir. 1993) and stated, "A criminal defense attorney's decision as to which evidence to present, including whether or not to call a given witness or present specific documents, is a matter of trial strategy... Strategic choices made after thorough investigation are virtually unchallengeable." The Appellant avers that the Court citing is appropriate, however, in this case the Counsel obviously did no thorough investigation. In the face of the Government's overwhelming evidence, it was unreasonable for Counsel to proceed with this misidentification defense, especially when he admits there was no plan to impeach the producer of the purported exculpatory evidence.

## Conclusion

In this case, Counsel's chose to bring forth a knowing misrepre-

sentation of the facts to the court disguised as a **Misidentification** defense, which was not based upon an adversarial scheme couched in principles of law, or with the intent to win a verdict of acquittal for the Appellant. Instead, it was a strategy hatched against overwhelming evidence by the Government, which counsel knew did not represent the truth. Counsel had an opportunity to mitigate the case against his client by simply offering him the plea made available by the Government. Counsel failure to make that offer was **Plain Error**.

Whether Counsel's performance can be judged **reasonable** is debatable under the prevailing professional norm. It is also debatable whether the strategic choice counsel made when assessing the facts and law of this case, was a plausible option. Counsel's choice cannot be couched in any limitation on investigation, when he had the opportunity, relevant Government evidence and an option of a plea offer. Finally, Counsel had the option to withdraw his representation if his client had refused to accept the plea offer rather than being placed into a conundrum of committing perjury to the Jury and Court. Counsel's deficient performance fell below the standard set forth in **Strickland V. Washington.**

2.0 Counsel was ineffective for inducing improperly admitted evidence by an alleged coconspirator concerning a purported threat made by Appellant toward him. The testimony represented an un-investigated allegation of prior bad act which was unfair and prejudicial. Counsel, after having induced the comment, failed to request the court to cure the remark, and later failed to object to the Government including the remark as an <u>obstruction of justice</u>, thereby enhancing the Appellant's sentence by 2-levels.

2.1    Counsel was ineffective for inducing an improper comment from coconspirator Altagracia concerning a purported threat made by the Appellant toward him. On Cross examination by Counsel, Altagracia was asked if he had ever spoken to Appellant? Altagracia responded, "when I was (in Prison), Mr Sandri Rijo yelled at me through the- in other words I was playing basketball out in the yard and he yelled at me and said that if I turned around with the authorities he was going to have my family kidnapped, that he was also going to have me beat up and that he had already given orders to have my family kidnapped." (ADD25;A505)

2.2     As this testimony was unfolding Counsel did not immediately object, and instead allowed the full weight of the testimony to be placed before the jury. After the exchange, counsel followed-up with the question, "you are really angry at Mr. Rijo." Counsel then asked the court if we may approach? During the sidebar, Counsel expressed to the Court that, This is news to him." "Counsel stated that he did recall the Government indicating there was no substance to the threats being made to any of the winesses in this case." (A505)

2.3     The Prosecutor explained that, "they were talking about the CS. That this issue was brought up by Counsel in cross, he opened the door for it." (A506) The Court stated, "(Counsel) could have stopped him, even since the time that he talked about the 2B unit(in prison), you could have stopped him, you did not do it. Because actually, based on his demeanor you were trying to capitalize on it. You chose the strategy and you have to live with it. And I agree any possible allegations of threats was concerning the CI. This one I dont' know if any one knew, but you had plenty of time to stop this witness. Plenty, overruled." (A506)

2.4     The Court alleged that Counsel's failure to stop the improper testimony by Altagracia was a strategic choice he made. Appellant avers that the choice was unreasonable, and while this choice has cost the Counsel nothing, it has cumulatively increased the Appellant's sentence by 2-levels. During the sentencing phase, the probation officers made a recommendation in their PSI report to enhance the Appellant 2-levels for obstruction of justice pursuant to the above referenced alleged threat given in Altagracia's testimony. Counsel failed to make a written objection to any parts of the PSI report. Therefore, the Court adopted the report with the 2-level enhancement for the obstruction of justice.

2.5     Counsel's failure to object to the 2-level enhancement which increased  the Appellant sentence from a base offense level of 32 to thirty four (34), combined with a history category of I, placing the Appellant in a sentencing range of 151-188 months as opposed to 121-151. Thus, counsel's failure to file a written objection to the PSR was ineffective assistance, and again reflect the need for a **Plain Error Review.**

2.6     In accord with §3C1.1, which states in dicta that the guideline specifically limits applicable conduct to that which occurs during an investigation. "The amendment which adopts the majority view, permits application of the guideline to obstructive conduct that occurs prior to the start of the investigation of the instant offense of conviction, by allowing the court to consider such conduct if it was purposefully calculated, and likely to thwart the investigation or prosecution of the offense of conviction."

## UNRELIABILITY OF EVIDENCE OF PRIOR CONDUCT

Federal Rules of Criminal Procedures 32 governs the contents, disclosure, and application of presentence investigations, as well as other information pertinent to the imposition of a guideline sentence. In **Burns V. United States, 111 S. Ct. 2182, 115 LED 2d 123 (1991),** the Supreme Court recently reconfirmed that the rule assures the **focus adversarial development (942 F. 2d 881)** of the factual and legal issues relevant to determining the appropriate guidelines sentence.

Relevant to this case, the rules requires the Court either to make specific findings as to all contested facts contained in the PSR that the Court finds relevant in sentencing, or determines that those facts will not be considered in sentencing. Rule 32 serves the twin goals of obtaining a fair sentence based on accurate information and obtaining a clear record of the resolution of disputed facts. **United States V. Smith, 844 F. 2d 203, 206 (5th Cir. 1998)**

Counsel was deficient for failing to submit a written objection to the PSR which would have served to force the Judge to make specific finding of evidence to support the Obstruction of Justice enhancement. Counsel's failure to object left the Appellant without any adversarial development of the factual and legal issue surrounding the obstruction enhancement. Especially, since the Court stipulated during trial, "this one I don't know if anyone knew."(A506) The Court let the attorney know at the trial that this alleged threat was never identified and corroborated in the investigation, and therefore, no factual basis was assigned to it. Counsel's failure to act as an adversary to the government in order to protect his client by assuring that the Government and the Court applied §3C1.1 and Rule 32 requirements was an

12

error that prejudice the Appellant. This deserve **Plain Error Review.**

The sentencing guidelines echo the concern of Fed. R. Crim. P. 32(C)(3)(D) by requiring the court to make factual findings on any disputed issue arising from the PSR, or determine that the disputed information will not affect the sentence. **United States V. Johnson, 935 F. 2d 45, 50-51 (4th Cir. 19910. In this case,** all Counsel had to do was dispute the enhancement and he would have won, because the law and the facts were on the side of Appellant. The record clearly reveals that this was Plain Error by Counsel, and his failure to protect the Appellant after inducing the improper remarks, was due to his deficient performance.

### 3.0 Appellant's sentence is procedurally and substantively unreasonable

3.1    Appellant's sentence is both procedurally and substantively unreasonable, given his minor role in the offense and the significantly more lenient sentences imposed on more culpable codefendants. This occurrence took place because the Court "**failed** to consider the § 3553(a) factors **and failed** to adequately explain the chosen sentence." **United States V. Prosperi, 686 F. 3d 32, 42 (1st Cir. 2012)(quoting Gall V. United States, 552 U.S. 38, 51 (2007)).** While the district court is granted discretion in its sentencing decisions, such discretion is "not toothless; and it is entirely proper for a reviewing court to find an abuse of discretion when important factors... are slighted." **Gall, 552 U.S. at 72; see also Millan-Isaac, 2014 WL 1613683, at *9 ("The district Court's discretion is not without limits.")** Nor does the district court's discretion change the fundamental requirement that under 18 U.S.C. § 3553(a)(6) the sentencing court must consider "the need to avoid unwarranted sentence disparities" among similarly situated defendants.

3.2    "**The linchpin** of a reasonable sentence is a plausible sentencing rationale and a defensible result." **United States V. Martin, 520 F. 3d 87, 96 (1st Cir. 2008).** In this case, the district court's explanation for Appellant's severe sentence is not plausible nor is the result defensible, particularly when examined against the sentences imposed

13

on his codefendants whom the judge acknowledged were plainly "**more culpable**" than Appellant. **(ADD45)** Though Appellant's minor role in the offense showed that he was the least culpable, he received the harshest punishment imposed on any indicted defendant: a 188-month sentence. **(ADD45-49) Bizarrely, the judge actually described the top-of-the-range sentence as "a lenient sentence." ADD48-49.**

3.3    The only other defendants who pleaded guilty and received sentences close to the length of Appellant's were Andy Laracuent (180 months), and Eduardo Ubiera (180 months), both of whom also pleaded guilty to an additional firearm charge. Junior De La Cruz, who was tried alongside Appellant, received the same exact sentence. Id. Yet, De La Cruz was significantly more culpable than Appellant, as he played a crucial role in the operation **(A468)**, demanded significant compensation for his assistance **(A424)**, and had been involved in prior drug trafficking operations **(A626-627)**.

3.4    Though the district court expressed concern that "more culpable" defendants were receiving comparatively light sentences and that an individual exercising his right to trial ought not to receive "undue punishment" **(ADD45)**, the court nevertheless imposed a sentence on Appellant that was by far the most severe. The Judge offered no plausible rationale for such a harsh sentence, thereby violating the statutory obligation to "**state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c)**. In fact, Appellant's harsh sentence, along with the failure to give a reason "for the glaring disparity in the sentence," indicates that he was impermissibly "**punished for exercising his constitutional right**" to a jury trial. **United States V. Mazzaferro, 865 F. 2d 450, 458 (1st. Cir. 1989); see also Lopez V. United States, 857 F. Supp. 1000, 1009-1010 (D.P.R. 1994). Indeed the government concedes that Appellants's sentence is different in part, because he proceeded to trial."**

3.5    In **Martin, 520 F. 3d at 94 supra.** The Court concluded that the focus on national disparities was not always "a winning argument," as a subpart of § 3553(a) also "directs a sentencing court to consider the need for a sentence to 'promote respect for the law, and to provide just punishment for the offense." 520 F. 3d at 94 (citing 18

14

U.S.C. § 3553(a)(2)(A)). Furthermore, in **Martin**, this court explained that, "we have on several occasions recognized that district courts have discretions... to align codefendants' sentences somewhat in order to reflect comparable degrees of culpability--at least in those cases where disparities are conspicuous and threaten to undermine confidence in the criminal justice system." Id. As the court noted, "respect for the law diminishes if natural principles of justice, such as the principle that punishment should correlate with culpability, are ignored." Id. (**citing Gall, 552 U.S. at 54**).

3.6     The district Judge did not explain her decision to impose the harshest sentence permitted within the applicable guidelines range, and the harshest sentence meted to any defendant in the case. Just the opposite-the district judge perplexingly stated that, "the court understands it is a lenient sentence." **ADD48**. In other words, the district court did not explain the reasoning behind the actual 188-month sentence imposed. See **Millan-Isaac, 2014 WL 1613683, at *8-9(failure to offer any written explanation and "limited oral explanation"** for the sentence imposed was **"inadequate as a matter of law."**) The result is procedurally and substantively unreasonable sentence that should not stand.

3.7     Counsel failed to challenge the procedure, or the substantively unreasonable sentence. The sixth amendment insists, among other things that counsel make conscious and informed decisions. A counsel must consider and bring, when available, all solid and meritorious arguments based on directly controlling precedents to the court's attention. In this case, it was a matter of presenting the guideline procedures and statutes on disparity in sentencing to the Court and or placing the objection on the record. As a result of counsel's many errors, the Appellant was prejudiced to the result of at minimum an additional 118 months in prison.

3.8     An express request for a complimentary Certificate of Appealability must be explicit as to the issues which the Petitioner wishes the Appellate Court to consider. In this case, because the district court has denied a Certificate of Appealability, Petitioner makes request for review of **Complimentary issues in this COA request.**

## CONCLUSION

In this instant case, Defense Counsel was so ill prepared that he failed to understand the factual position his clien faced, nor the legal significance of the claim he chose to put forth in his client's defense. Second, Counsel failed to understand the basic procedural requirements applicable to the sentencing phase in order to protect his client from further prejudice. In overall view of the case it is obvious that counsel failed to provide service within the range of competency expected of members of the criminal defense bar.

In **Young V. Zant, 677 F.2d 792 (11th. Cir. 1982)** Id. Counsel for Young had two options in preparing his defense; Counsel could put the state to the proof or he could seek to avoid the State's case with an affirmative defense. Counsel opted for the latter strategy; he would establish that his client was not guilty by reason of insanity. Counsel could not support this defense, however, Young's confession gave no indication that he was insane when he assaulted Flynt, and Counsel did not uncover any evidence that pointed to insanity. Indeed Counsel did not even have his client examined by a psychiatrist to determine his mental capacity at the time of the alleged offense. Counsel did enter a special plea of insanity prior to trial, but he entered it under the erroneous belief that the plea raised the question of whether Young was insane when the offense was committed. A special plea under Georgia law, actually questions the defendant's competence to stand trial, it has nothing whatever to do with the affirmative defense of insanity, which is raised by a general plea of sanity. A Court ordered Psychiatric examination demonstrated that the defendant was competent to stand trial, and Counsel withdrew his special plea of sanity. Counsel thus proceeded to trial on an insanity defense he could not possibly

establish. The foregoing illustration depicts this instant case. The Court in **Young** found counsel performance deficient and the case was remanded. Also for the foregoing reasons, Petitioner/Appellant respectfully requests that this Honorable Court grant this request for **COA**.

## CERTIFICATE OF SERVICE

I, Sandri Rijo, hereby Certify that I have submitted the foregoing request for COA to the United States Court of Appeals, for the First Circuit, John Joseph Moakley, United States CourtHouse, One Courthouse Way, Suite 2500, Boston MA. 02210-3002. By U.S. Mail with First class Postage Prepaid. I further request that any additional required copies be served through the CM/ECF system as I am currently incarcerated, indigent and with out access.

Sworned to this 8th, day of January, 2018, under penalty of perjury.

RESPECTFULLY SUBMITTED

Sandri Rijo #38251-069
FCI OAKDALE I
P.O. BOX 5000
OAKDALE, LA 71463